Randall L. CLEARY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–9507–CR–260.

Court of Appeals of Indiana.

April 9, 1996.

David W. Hopper, Anderson, for Appellant.

Pamela Carter, Attorney General of Indiana, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Randall Cleary appeals his conviction and sentence for burglary, a class B felony. He raises six issues for review, which we restate as:

1) whether the trial court erred in permitting the State to comment on Cleary's decision not to testify;

2) whether the trial court violated Cleary's right to confrontation;

3) whether Cleary received ineffective assistance of counsel;

4) whether the court erred in admitting evidence seized without a search warrant;

5) whether the trial court erred in permitting the State to introduce the victim's testimony; and

6) whether the trial court erred in sentencing Cleary.

We affirm.

The facts most favorable to the judgment follow. On February 24, 1994, Cleary and his accomplice, Ricky Foster, broke into a house in Pendleton, Indiana. They kicked in the front door and then opened the garage door. Cleary drove his pick-up truck into the garage, and they loaded it with a number of items from the house, including a computer, a child's all terrain vehicle, and a gym bag containing clothes.

Several days later, Foster contacted Stephen DuBois, an undercover detective posing as a thief. Foster was unaware that DuBois was investigating a stolen property ring in which Foster and Cleary were suspects. On this occasion, DuBois asked Foster to sell him a computer. When DuBois offered to trade five diamonds for the computer, Foster told him that he needed to consult with his "partner." Record, p. 613.

Foster later informed DuBois that his partner wanted to appraise the diamonds, so they scheduled a meeting. DuBois went to the arranged meeting place, where Foster introduced him to Cleary. All three got into Cleary's car and went to a pawn shop. Cleary then took the diamonds into the pawn shop and had them appraised.

While Cleary was in the pawn shop, Foster told DuBois that the computer was stolen. Foster described in detail how he and Cleary broke into a house and stole the computer.

When Cleary returned, he informed DuBois that the diamonds were insufficient to

trade for the computer. In response, DuBois offered him two cameras in addition to the diamonds. Cleary accepted this offer and instructed Foster to give DuBois the computer.

After DuBois inspected the computer, he discovered that it was stolen from a house in Pendleton, which belonged to Sherrie and Brent Bennett. Cleary was apprehended and charged with burglary. Later, he was also charged with being an habitual offender.

After a jury trial, Cleary was convicted on the burglary charge. At the sentencing hearing, the State dismissed the habitual offender charge. The trial court sentenced Cleary to twenty years. Cleary now appeals both his conviction and sentence.

I.

The first issue raised for review is whether the trial court erred in permitting the State to comment on Cleary's decision not to testify. During closing arguments, the Prosecutor stated:

> "[D]id [Cleary] do it knowingly or intentionally? The Judge is going to instruct you what those things mean. Knowingly, did he know he was doing it when he did it? He's given nothing in the evidence you heard to rebut that. We didn't hear any evidence that he was either intoxicated, so mentally deficient not to know what he was doing, high otherwise, nothing of the sort."

Record, p. 1365.

■ Cleary contends that this statement "could lead the jury to draw an impermissible inference that the defendant did not testify because he is guilty." Appellant's brief, p. 8. However, the record reveals that defense counsel did not object when the State made this alleged improper comment. Instead, defense counsel raised the objection and requested admonishments only after the State finished its rebuttal argument.

■ Failure to object to prosecutorial comments in a timely fashion results in a waiver of the issue for review. *Cox v. State,* 475 N.E.2d 664, 670 (Ind.1985). An objection to prosecutorial comments is untimely when raised after the State has concluded its final

argument. *Pavone v. State,* 402 N.E.2d 976, 979 (Ind.1980).

Since Cleary's objection to the comment was not made until the State had finished its final argument, the objection was untimely. Accordingly, Cleary has waived review of this issue on appeal.

II.

■ The second issue for review is whether the trial court violated Cleary's right to confrontation. During the trial, Detective DuBois testified that Foster admitted he and Cleary burglarized the Bennetts' house. Later, the State called Foster to testify, but the court declared him incompetent and instructed the jury to disregard his testimony. Cleary argues that his right to confrontation was violated when the court refused to strike DuBois' testimony concerning Foster's incriminating statements.

■ However, Cleary did not object to the introduction of the evidence he now challenges as a violation of his right to confrontation. When a defendant fails to properly bring an objection to the trial court's attention so that the court may rule on it at the appropriate time, he is deemed to have waived that possible error. *Palmer v. State,* 640 N.E.2d 415, 422 (Ind.Ct.App.1994). To preserve the issue for appeal, an objection must be made at the time the error is made. *Id.* Consequently, Cleary has not preserved as error his contention that the evidence admitted denied him the right of confrontation. *See Simpson v. State,* 628 N.E.2d 1215, 1218 (Ind.Ct.App.1994), *trans. denied.* Therefore, we hold that Cleary has also waived review of this issue on appeal.

III.

The third issue raised for review is whether Cleary received ineffective assistance of counsel. Cleary contends that defense counsel was ineffective for failing to object to DuBois' testimony concerning Foster's incriminating statements.

■ Upon review of a claim of ineffective assistance of counsel, we measure counsel's performance against a "reasonably effective assistance" standard. *Burr v. State,*

492 N.E.2d 306, 307–08 (Ind.1986). The defendant has the burden to overcome the presumption of competence by showing strong and convincing evidence. *Id.* at 308 (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Our scrutiny is deferential and should not be distorted by hindsight; isolated poor strategy or bad tactics do not imply ineffectiveness. *Id.*

■■■ In reviewing a claim of ineffective assistance of counsel, we apply a two-step analysis. First, we determine whether the acts or omissions of counsel were outside the wide range of professionally competent assistance. *Sparks v. State,* 499 N.E.2d 738, 739 (Ind.1986). If so, we then determine whether such acts or omissions prejudiced the defendant. *Sulie v. State,* 522 N.E.2d 380, 384 (Ind.1988), *reh'g denied.* Prejudice exists where there is " 'a reasonable probability that, absent the errors, the fact finder would have had a doubt respecting guilt.' " *Smith v. State,* 511 N.E.2d 1042, 1043 (Ind. 1987) (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068).

■■■ We find Cleary has not established that his counsel's conduct was outside the wide range of professionally competent assistance. *See Sparks,* 499 N.E.2d at 739. The burden is on the defendant to show that counsel's objection would have been sustained had it been made. *Myers v. State,* 617 N.E.2d 553, 556 (Ind.Ct.App.1993). In his brief, Cleary does not show that the objection would have been sustained, but rather, admits that the objection "would likely have been overruled." Appellant's brief, p. 12. Accordingly, Cleary has failed to establish that he received ineffective assistance of counsel.

### IV.

The fourth issue raised for review is whether the court erred in admitting evidence seized without a search warrant. During the trial, the State searched Cleary's jail cell and seized a belt, which was alleged to have been stolen from the Bennetts' house. The State then admitted the belt as rebuttal evidence.

Cleary argues that the trial court erred in admitting the belt into evidence because Cleary's jail cell was searched without a warrant. He claims that he had a reasonable expectation of privacy in his jail cell which required the State to obtain a warrant before searching the cell. Cleary contends that since his jail cell is a transitory place of residence, he "could reasonably expect some level of privacy just as he could in a motel room." Appellant's brief, p. 15.

In support of this contention, Cleary cites to *Mowrer v. State,* 447 N.E.2d 1129 (Ind.Ct. App.1983). However, we find Cleary's reliance on *Mowrer* to be misplaced. In this case, we addressed the legality of an arrest conducted without an arrest warrant. *Id.* at 1131. We held that the defendant's hotel room was his transitory home, and therefore, the defendant had the same expectation of security from intrusion as he would in his own home. *Id.* at 1131–32. Because the case did not involve a search warrant, we specifically stated that we would not address "whether Mowrer had a reasonable expectation of privacy." *Id.* at 1131.

■■■ While Indiana courts have not addressed the level of privacy in jails, there is ample case law concerning prisons. Our Supreme Court has held that a prison inmate does not have a reasonable expectation of privacy in his cell entitling him to Fourth Amendment protection against unreasonable searches and seizures. *Perkins v. State,* 483 N.E.2d 1379, 1384 (Ind.1985) (citing *Hudson v. Palmer,* 468 U.S. 517, 527–28, 104 S.Ct. 3194, 3201, 82 L.Ed.2d 393 (1984) (stating that a prison cell shares none of the same attributes of privacy as a hotel room)). The Supreme Court reasoned that the right to privacy was incompatible with the need to maintain security by close surveillance of the inmates and their cells. *Id.*

■■■ Likewise, we find that a defendant does not have a reasonable expectation of privacy in his jail cell. While jails are transitory in nature, they share many of the same attributes of prisons. Similar to the reasons set forth in *Perkins,* the right to privacy is incompatible with the need to maintain security within the jail. Accordingly, the trial

court did not err in admitting evidence seized after a warrantless search of Cleary's cell.

## V.

The fifth issue raised for review is whether the trial court erred in permitting the State to introduce the testimony of the victim, Brent Bennett. During the trial, Bennett recognized that Cleary was wearing a belt which had been stolen from his house. After the defense rested, Bennett informed the State that Cleary was wearing the stolen belt. The next morning, the State searched Cleary's jail cell and seized the belt. On rebuttal, Bennett testified that the belt was stolen from his house.

Cleary contends that the trial court erred in permitting Bennett to testify because the State failed to disclose Bennett in the criminal information. Cleary relies on Ind.Code § 35-34-1-2(c), which states: "An indictment or information shall have stated upon it the names of all material witnesses." I.C. § 35-34-1-2(c).

However, the trial court has broad discretion in ruling on violations of discovery, and we will reverse only if the court has abused its discretion. *Palmer*, 640 N.E.2d at 421. The trial court may exclude evidence as a discovery abuse sanction only when there is a showing that the State engaged in deliberate conduct which prohibited the defendant from receiving a fair trial. *Id.* The nondisclosure of a rebuttal witness is excused when that witness was unknown and unanticipated. *Sloan v. State*, 654 N.E.2d 797, 804 (Ind.Ct.App.1995), *trans. denied* (quoting *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 179 (Ind.1993)).

In his brief, Cleary does not allege that the State engaged in deliberate conduct to deny him a fair trial. *See Palmer*, 640 N.E.2d at 421. Moreover, the State could not have anticipated that Bennett would testify since it did not discover that Cleary had the stolen belt until the defense had rested. Accordingly, the State was excused from disclosing this witness. We hold that the trial court did not err in permitting Bennett to testify.

## VI.

The final issue for review is whether the trial court erred in sentencing Cleary to twenty years. Cleary argues that the trial court failed to list the aggravating factors when it enhanced his sentence. He requests that we remand the cause for a new sentencing hearing.

A sentence determination is within the discretion of the trial court. *Duvall v. State*, 540 N.E.2d 34, 36 (Ind.1989). We will revise a sentence authorized by statute only if it is manifestly unreasonable in light of the offense and the offender. Ind. Appellate Rule 17(B)(1); *Berry v. State*, 561 N.E.2d 832, 840 (Ind.Ct.App.1990). A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender for which the sentence was imposed. App.R. 17(B)(2); *Parrish v. State*, 515 N.E.2d 516, 521 (Ind.1987).

The trial court may properly impose an enhanced sentence when the only aggravating factor is a prior criminal history. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993). The trial court is not obligated to find any mitigating factors. *Id.*

When the trial court uses its discretionary power to enhance a sentence, the record must disclose what factors were considered to justify such a sentence. *Boyd v. State*, 564 N.E.2d 519, 524 (Ind.1991). The trial court's statement must: 1) identify all of the significant mitigating and aggravating circumstances; 2) state the specific reason why each circumstance is considered to be mitigating or aggravating; and 3) show that the court evaluated the circumstances to determine if the aggravating circumstances offset the mitigating ones. *Id.* at 524–25. Such a statement is necessary to assure an adequate review of the reasonableness of the sentence imposed. *Henderson v. State*, 489 N.E.2d 68, 72 (Ind.1986). A "perfunctory recitation" of the statutory factors is insufficient to afford an adequate review. *Shackelford v. State*, 622 N.E.2d 1340, 1345 (Ind.Ct. App.1993).

■ However, we will not remand a sentence whenever the trial court fails to adequately state the aggravating factors used to justify an enhanced sentence. *Beasley v. State*, 445 N.E.2d 1372, 1375 (Ind.1983); *Cleary v. State*, 638 N.E.2d 431, 434–435 (Ind.Ct.App.1994), *trans. denied.* "When the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reasons for enhancing sentence and the record indicates that the sentence imposed was not manifestly unreasonable, then the purpose underlying the specificity requirement have been satisfied." *Henderson*, 489 N.E.2d at 72. Our Supreme Court has held that a remand in such a situation "to articulate the aggravating circumstance of a history of criminal activity would be pointless." *Adkins v. State*, 532 N.E.2d 6, 9 (Ind.1989).

■ In the present case, the trial court relied upon a single aggravating factor to enhance Cleary's sentence. At the sentencing hearing, the trial court stated:

"I think it's, on the other hand, fallacious to argue that you should be treated as Ricky Foster is treated for the very reason that [the State] set out. There's no comparison in either your criminal history, and there is no basis to do anything in terms of the sentence other than that which is requested by the State. The aggravation is, as I said, an extensive prior criminal history. For Count 1, Burglary, a Class B felony, you'll be sentenced to the Department of Correction for a period of twenty years."

Record, pp. 1448–49.

The trial court has discretion to enhance Cleary's sentence based on his criminal history. *See Fugate*, 608 N.E.2d at 1374. However, the court never disclosed the crimes which composed Cleary's history, and we do not find his criminal record in the record of the proceedings. The trial court also failed to identify specific facts from which to find the existence of a prior history as required by statute.

While the trial court's statement did not sufficiently articulate the court's reasons for enhancing Cleary's sentence, it still satisfies the purpose underlying the specificity requirement. *See Henderson*, 489 N.E.2d at 72. First, the sentencing statement indicates that the court engaged in an evaluative process. After hearing the recommendations of the State and the defense, the court determined that Cleary should receive a harsher sentence than Foster and that there were no mitigating factors which would justify a lesser sentence.

Second, the record indicates that the sentence was not manifestly unreasonable. While the presentence report, which contained Cleary's criminal history, does not appear in the record, Cleary did admit at the sentencing hearing that he had a criminal record. The State elicited the following testimony:

"Q. Mr. Cleary, in your criminal history as it's reported in the Pre–Sentence Report, it talks about your most recent charges both in Marion and Boone Counties?

A. Yes.

Q. Okay. And do you have a pending burglary charge that's set for trial in Boone County?

A. Yes.

Q. Okay. So besides the one from April on page 5, Your Honor, besides the April 7th, '93, burglary in which you were convicted and got the sentence enhancement, had 30 years on that one . . .

A. Yes, sir.

Q. You have another one pending trial?

A. Yes."

Record, pp. 1438–39. Since the record indicates that Cleary, in fact, had a criminal history, the trial court's enhanced sentence was not manifestly unreasonable. *See Henderson*, 489 N.E.2d at 72. According, the court did not err in sentencing Cleary.

For the foregoing reasons, we affirm the trial court's judgment in all respects.

AFFIRMED.

HOFFMAN and RUCKER, JJ., concur.