Jason GRAHAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A02–0002–CR–74.

Court of Appeals of Indiana.

Oct. 24, 2000.

Transfer Denied Dec. 6, 2000.

**824**

Jack Quirk, Muncie, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATHIAS, Judge

Jason Graham appeals from his convictions for burglary, a class B felony, and rape, a class B felony. Graham presents four issues on appeal, which we combine and restate as:

  I.   Whether the trial court erred in its application of the Rape Shield Law to exclude testimony of prior unrelated rape allegations made by the victim;

  II.  Whether the trial court abused its discretion in limiting Graham's cross-examination of the victim's mother, while allowing the prosecution to elicit allegedly irrelevant testimony from a defense witness; and

  III. Whether there is sufficient evidence to support the convictions.

We affirm.

### Facts and Procedural History

The facts most favorable to the judgment reveal that on November 9, 1998, seventeen-year-old D.G. spent the afternoon doing laundry at her father and stepmother's home. At 10:20 p.m., she left with her boyfriend and another friend and returned to her apartment, where she lived alone. D.G.'s friends left around 11:00 p.m. Shortly thereafter, Graham, D.G.'s stepbrother, arrived at D.G.'s apartment. Graham claimed that his mother and D.G.'s father had made him leave their home. D.G. allowed Graham to stay for a while, but declined his request to stay overnight.

During his visit, Graham told D.G. that he wanted her to be his baby and that he wanted to marry her. D.G. told Graham to leave. Graham left between 11:30 p.m. and 12:00 a.m. D.G. locked the door to her apartment and went to bed. In the early morning hours, D.G. awakened to find Graham on top of her, engaging in sexual intercourse with her. D.G. told Graham to get off of her. Graham got off of D.G. and left the apartment. D.G. later went to a neighbor's house to telephone for help.

The State charged Graham with burglary and rape, both class B felonies. Graham was convicted as charged following a bench trial and sentenced to a concurrent ten-year prison term for each count. Graham appeals.

## I. Application of the Rape Shield Rule

During his trial, Graham sought to introduce testimony showing that D.G. had previously made false allegations of rape. Graham contends that the trial court improperly excluded this testimony pursuant to the Rape Shield Statute. *See* Ind.Code § 35–37–4–4 (1998). Specifically, Graham argues that the trial court's ruling was erroneous, because these prior rape allegations were untruthful and, as such, constitute verbal conduct, which is not subject to rape shield protection. We disagree.

Initially, we note that, although the trial court and each party applied Ind. Code. § 35–37–4–4 to the issue at hand during the trial, we will conduct our analysis pursuant to Indiana Evidence Rule 412. Effective January 1, 1994, the Indiana Supreme Court adopted the Indiana Rules of Evidence. Indiana Evidence Rule 412, commonly referred to as the Rape Shield Rule, embodies the basic principles of Indiana's Rape Shield Statute, as explained by our State Supreme Court:

[I]nquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes.

*State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999) (quoting *Williams v. State*, 681 N.E.2d 195, 200 (Ind.1997)). However, Evid. R. 412 was not adopted verbatim from the Rape Shield Statute. To the extent there are any differences, Evid. R. 412 controls. *Id.*

■■■ Ind. Evidence Rule 412(a) lists four exceptions to the general rule that evidence of past sexual conduct of a victim or a witness may not be admitted. In addition to these enumerated exceptions, a common-law exception has survived the 1994 adoption of the Indiana Rules of Evidence. *Walton*, 715 N.E.2d at 827. This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *Id.* at 825–26. In presenting such evidence, the defendant is not probing the complaining witness's sexual history. Rather, the defendant proffers the evidence for impeachment purposes to demonstrate that the complaining witness has previously made false accusations of rape. Viewed in this light, evidence of prior false rape accusations is more properly understood as verbal conduct, not sexual conduct. Consequently, its admission does not run afoul of the Rape Shield Rule. *Id.* at 826. It is important to note, however, that prior true accusations of rape do constitute evidence of the complaining witness's prior sexual conduct. Such evidence is therefore inadmissible under the Rape Shield Rule. *Id.* at 827 n. 7 (citing *Little v. State*, 413 N.E.2d 639, 643 (Ind.Ct.App.1980)).

Subsection (b) of Evid. R. 412 sets forth the procedural requirements for a party to introduce evidence that qualifies under one of the exceptions in subsection (a):

(b) If a party proposes to offer evidence under this rule, the following procedure must be followed:

(1) A written motion must be filed at least ten days before trial describing the evidence. For good cause, a party may file such motion less than ten days before trial.

(2) The court shall conduct a hearing and issue an order stating what evidence may be introduced and the nature of the questions to be permitted.

Evid. R. 412(b). This notice-and-hearing requirement furthers the purpose and intent of the Rape Shield Rule. As Justice Blackmun noted in *Michigan v. Lucas* (regarding Michigan's rape shield rule), states incorporate these notice-and-hearing requirements into their evidentiary rules because:

rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy. In addition, a notice-and-hearing requirement is specifically designed to minimize trial delay by providing the trial court an opportunity to rule on the admissibility of the proffered evidence in advance of trial.

500 U.S. 145, 154, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991)(Blackmun, J., concurring).

■■ In this case, however, the testimony Graham sought to elicit was purportedly evidence of a prior false rape allegation, which is the common-law exception rather than one of the express exceptions to the Rape Shield Rule. Therefore, we must address whether a party offering such evidence must comply with the procedural provisions of subsection (b). Although we have found no caselaw addressing that specific issue, an inference may be drawn from the language used by both this court and the Indiana Supreme Court in *Walton*

that the provisions of subsection (b) do indeed apply. *See State v. Walton*, 692 N.E.2d 496, 499 (Ind.Ct.App.1998) (Prior to trial, and in accordance with Indiana Rule of Evidence 412(b), Walton notified the court of his intent to present evidence that the alleged victim had made demonstrably false prior allegations of rape.), *trans. granted; Walton*, 715 N.E.2d at 825 (Before trial, Defendant filed a Rape Shield Notice, indicating his intent to present evidence that the complaining witness had made demonstrably false prior allegations of rape.). Consequently, we formally adopt the application of the procedural provisions of Evid. R. 412(b) to the common-law Rape Shield Rule exception allowing evidence of a prior false rape allegation. *Walton*, 715 N.E.2d at 825–27.

■■■ Prior to Graham's waiver of trial by jury, the State filed a motion in limine invoking the Rape Shield Statute to prohibit evidence of D.G.'s past sexual conduct. The trial court granted the motion without objection from Graham. In order to present evidence of prior false rape allegations made by D.G., Graham was required to file a written notice describing the evidence at least ten days prior to trial. Failure to file timely a Rape Shield Notice precludes such evidence, unless there is a showing of good cause. Evid. R. 412(b)(1); *Stephens v. State*, 544 N.E.2d 137, 139 (Ind.1989); *Turner v. State*, 720 N.E.2d 440, 445 n. 2 (Ind.Ct.App.1999); *Posey v. State*, 624 N.E.2d 515, 519 (Ind. Ct.App.1993). Clearly, Graham failed to comply with the procedural mandate of Evid. R. 412(b). Although this failure was neither raised by the State at trial or on appeal nor formed the basis of the trial court's decision to exclude the evidence, we find that Graham's procedural error is fatal to his attempt to introduce evidence of prior false rape allegations. To hold otherwise would allow circumvention of the rule itself. *Id.*

■■■ Graham's attempts to introduce the prior false rape allegations fail in other respects as well. During the trial, Graham sought to elicit testimony from various witnesses to prove that D.G. had previously made a demonstrably false rape allegation. The incident allegedly occurred when D.G. was approximately thirteen years old and went on a date with an unidentified male, whom she claimed took advantage of her by having sex with her while she was intoxicated. R. at 215. D.G. reported the incident to the Ridgeville Town Marshall, who never filed charges against the unidentified male. Graham contends D.G. claimed that the Town Marshall told her the rape was her own fault for putting herself in that position. R. at 214.

The trial court initially took the issue under advisement, but, after hearing D.G.'s testimony regarding the prior alleged incident, excluded the testimony as irrelevant. The trial court found that the fact D.G. alleged she was sexually assaulted while she was intoxicated essentially constitutes rape. D.G. at no time admitted that her prior accusation of rape was false. Likewise, subsequent to related testimony from the Town Marshall, the trial court ruled that Graham failed to establish that D.G.'s rape allegation was demonstrably false. We agree with the trial court's determination. Accordingly, because the testimony did not fall under any of the rape shield exceptions, it was properly excluded.

■■■ Graham also makes a tenuous argument that the trial court's application of the Rape Shield Statute violated his Sixth Amendment right of confrontation and compulsory process. It would appear that Graham's assertions are based on the trial court's ruling that Graham failed to evince evidence that D.G.'s prior rape allegation was demonstrably false. Because Graham presents no argument with regard to compulsory process and because there is no evidence in the record to suggest that this right was in some way violated, we only address Graham's right to confront and cross-examine witnesses.

■■■ Indiana's Rape Shield Statute has repeatedly been found constitutional on its

face so long as it does not violate a defendant's right to cross-examination. *Clark v. State,* 728 N.E.2d 880, 887 (Ind.Ct.App. 2000) (citing *Steward v. State,* 636 N.E.2d 143, 147–48 (Ind.Ct.App.1994), *aff'd,* 652 N.E.2d 490 (Ind.1995)). However, the constitutionality of the statute as applied to preclude specific exculpatory evidence must be examined on a case-by-case basis to assure that no violation of the right to cross-examination has occurred. *Clark,* 728 N.E.2d at 887.

In this case, the record shows that the trial court allowed Graham wide latitude in cross-examining witnesses. Time and again, the trial court overruled or took under advisement the State's objections, essentially allowing Graham to make numerous offers to prove, before ruling on the admissibility of the evidence. In the end, it was Graham's inability to present relevant evidence to demonstrate the falsity of D.G.'s prior rape allegations that led to the exclusion of Graham's proffered evidence. We find no violation of Graham's Sixth Amendment right to confront and cross-examine witnesses.

## II. D.G.'s Prior Counseling and Gender Identification Testimony

Graham contends that the trial court abused its discretion when it sustained the State's relevancy objections to Graham's cross-examination of D.G.'s mother regarding D.G.'s troubled childhood and contemporaneous counseling she received. We disagree.

■ Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401. The trial court has broad discretion in ruling on the admissibility of evidence and in determining its relevancy. We will disturb its ruling only upon a showing of abuse of that discretion. *Drake v. State,* 655 N.E.2d 574, 575 (Ind.Ct.App.1995)(cit-

ing *Kremer v. State,* 514 N.E.2d 1068, 1073 (Ind.1987)).

■ The trial court allowed Graham considerable leeway in questioning D.G.'s mother during cross-examination. Over the State's numerous objections, Graham was permitted to inquire into D.G.'s rebellious nature as a child, including her expulsion from school at the age of fourteen for using marijuana and for giving drugs to other students. This wide-ranging cross-examination continued until Graham asked whether it was true that D.G. had received mental health counseling since the age of nine. Upon the State's objection, the trial court inquired into the purpose of Graham's line of questioning. Graham answered that he wanted to draw out more information regarding D.G.'s history of being a rebellious child. R. at 185. Clearly, whether D.G. was a rebellious child has no bearing on whether she was raped by Graham. The trial court properly sustained the objection. We find no abuse of discretion.

■ Graham also argues that the trial court abused its discretion in allowing the State to question his witness with regard to the witness's transsexuality. Graham maintains that the State's questions delving into the life of the witness as a preoperative transsexual were not only irrelevant, but mere sideshow antics offered to bias the court by the individual's oddity. Appellant Brief at 12.

Be that as it may, Graham has offered no authority in support of his argument. In response to Graham's objection during the trial, the State asserted that it was trying to verify the witness's identity, because the witness stated that he was D.G.'s biological father and at the same time held a valid driver's license on which he listed himself as a female. The trial court allowed the questions and answers, the witness testified as to his sexual identity, and the State pursued the matter no further. We find no abuse of discretion in the trial

court's ruling, especially in light of the fact that the trial at issue was a bench trial.

### III. Sufficiency of the Evidence

Finally, Graham contends that the evidence is insufficient to support his convictions. When reviewing a claim of insufficiency of the evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Davis v. State,* 658 N.E.2d 896, 897 (Ind.1995). We do not reweigh evidence or assess witness credibility. *Id.* The conviction will be affirmed unless we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

In order to support a conviction for burglary, a class B felony, the State had to prove that Graham broke into and entered the residence of D.G. with the intent to commit a felony, i.e. rape. Ind. Code § 35–43–2–1 (1998). To support a conviction for rape, a class B felony, the State had to prove that Graham had sexual intercourse with D.G. when: (1) D.G. was compelled by force or imminent threat of force; (2) D.G. was unaware that the sexual intercourse was occurring; or (3) D.G. was so mentally disabled or deficient that consent to sexual intercourse could not be given. Ind.Code § 35–42–4–1(a) (1998).

The facts most favorable to the judgment indicate that Graham returned to D.G.'s residence in the early morning hours, while she was asleep, and entered the residence without D.G.'s knowledge or permission. Graham proceeded to have sexual intercourse with D.G. while she was asleep and unaware such intercourse was occurring. The evidence supports Graham's convictions for both burglary and rape, class B felonies.

Affirmed.

FRIEDLANDER, J., and NAJAM, J., concur.