## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 22 2018, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

Barry Blackard
Blackard & Brinkmeyer
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Andrew Ludwig,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

March 22, 2018

Court of Appeals Case No.
82A01-1709-CR-2155

Appeal from the Vanderburgh
Superior Court

The Hon. Robert J. Pigman, Judge

Trial Court Cause No.
82D03-1610-F3-6173

**Bradford, Judge.**

# Case Summary

[1] When A.R. was twelve years old, she began to walk to school using the driveway of Appellant-Defendant Robert Ludwig, a long-time friend of her adoptive family. Ludwig and his wife began to invite A.R. into their home, and, when A.R. was still in the sixth grade, Ludwig touched her on the outside of her vagina. A.R.'s visits, and Ludwig's molestation, continued as A.R. moved on to high school. A.R. eventually reported the molestation to an adult friend, a teacher, a school counselor, and her mother.

[2] The State charged Ludwig with several crimes. Before trial, Ludwig sought to introduce evidence that somebody had made a false accusation of sexual misconduct against A.R.'s biological father when A.R. was approximately two years old. The trial court did not allow Ludwig to introduce the evidence. A jury found Ludwig guilty of Class C Felony child molesting, one count of Class D Felony child solicitation, and Level 5 Felony child solicitation, and the trial court sentenced him to twelve years of incarceration. Ludwig contends that the trial court abused its discretion in disallowing the evidence of a prior, false accusation of molestation and that his sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

[3] In around 2005, A.R.'s parents adopted her after caring for her since she was around two-and-one-half years old. Ludwig is a long-time acquaintance of

A.R.'s family and lives next door to A.R.'s grandmother. In 2012, when A.R. was twelve years old and attending the sixth grade, her parents would leave her at her grandmother's home when they left for work, and A.R. would walk to the nearby middle school, taking a shortcut through Ludwig's driveway. Shortly after A.R. began using the shortcut, Ludwig and his wife invited her inside, and soon A.R. became a frequent visitor. While A.R. was still in the sixth grade, Ludwig began touching her on the outside of her vagina when she visited. When A.R. informed Ludwig's wife of these acts, she did not appear to be concerned and did nothing about them. Ludwig's sexual molestation of A.R. continued through her eighth-grade year.

[4] A.R. continued to visit Ludwig's home when she was in high school, and the sexual molestation continued. Ludwig often told A.R. that he wished that she was older so that their sexual activities would be legal. The last time that A.R. visited Ludwig, he and his wife provided A.R. with a large quantity of alcohol, causing A.R. to lose memory of what had happened. Because A.R. did not want her grandmother to see her so intoxicated, she called her adult friend Janet Hurley to take her home.

[5] A.R. eventually disclosed the sexual molestation to Hurley, a teacher, and a guidance counselor, which led to the police being notified. A.R. also texted her mother about the molestation. A.R. underwent a forensic interview but later had a second forensic interview after she disclosed more molestation to her mother. Eventually, the State charged Ludwig with Class A Felony child molesting, Class C Felony child molesting, Class B Felony sexual misconduct

with a minor, Level 4 Felony sexual misconduct with a minor, two counts of Class D Felony child solicitation, and Level 5 Felony child solicitation.

[6] In a hearing held at the beginning of trial on July 19, 2017, Ludwig objected to the State's previously-filed motion in limine concerning the Rape Shield Act[1] and stated that the defense wanted to ask A.R.'s adoptive mother about an allegation of sexual abuse on the part of A.R.'s biological father, which allegation was apparently made by someone when A.R. was no more than two years of age. The following exchange took place:

> [Defense Counsel]: The question would be that I would remind her or I would ask her that prior to [A.R.'s adoptive parents] having [A.R.] as their daughter living in their home, have there ever been any other allegations um, involving [A.R.] that she was sexually abused. And I'd expect her answer to be that there was an allegation of abuse, although unfounded, by [A.R.]'s biological father.
>
> [Prosecutor]: Some of these statements are discussed also in the Defendant's interview as well.
>
> [Defense Counsel]: Correct.
>
> [Prosecutor]: Um, and my intention was to play the interview in its entirety uh and it's going to be mentioned there so, uh—.
>
> THE COURT: Okay this—I'm a little unclear. The [biological] Father made the accusation or A. made the accusation?
>
> [Prosecutor]: There is an allegation that A.'s biological father uh, that there was sexual misconduct there.

---

[1] Indiana Code section 35-37-4-4, which governs the admissibility of evidence of prior sexual behavior, is generally known as "the Rape Shield Act."

THE COURT: Okay who said that? Who accused the father?

[Prosecutor]: That's—I don't know the exact person who accused the father, but its [A.R.'s adoptive mother's] father (sic) they know about this. They know about this prior issue and um—.

THE COURT: Well the only way—I mean if you're not objecting and it's not an issue but the only way a prior allegation comes in is if it's demonstrably false and the mere fact that it wasn't prosecuted or proceeded on does not mean that it's demonstrably false. Is it something the child said or do we even know that?

[Prosecutor]: I don't know the exact details about how that arose.

[Defense Counsel]: And I don't know the answer to that either Judge.

THE COURT: Well then I'm not going to permit it.

Tr. Vol. II pp. 15–16. The trial court granted the State's motion in limine

[7] On July 21, 2017, a jury found Ludwig guilty of Class C Felony child molesting, one count of Class D Felony child solicitation, and Level 5 Felony child solicitation. On August 22, 2017, the trial court sentenced Ludwig to five years of incarceration for Class C Felony child molesting, two years for Class D Felony child solicitation, and five years for Level 5 Felony child solicitation, all sentences to be served consecutively.

# Discussion and Decision

# I. Evidence of Other Allegations of Sexual Misconduct

[8] The admission or exclusion of evidence is a matter that is generally entrusted to the discretion of the trial court. *See Pribie v. State*, 46 N.E.3d 1241, 1246 (Ind. Ct. App. 2015), *trans. denied*. Therefore, a trial court's ruling excluding evidence is reviewed on appeal for an abuse of discretion. *Tibbs v. State*, 59 N.E.3d 1005, 1011 (Ind. Ct. App. 2016), *trans. denied*. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. Moreover, the trial court's ruling will be upheld on appeal if it is sustainable on any legal reason supported by the record, even if it is not the reason used by the trial court. *Id*.

[9] Pursuant to Indiana Rule of Evidence 412, evidence offered to prove that a victim or witness engaged in other sexual behavior is inadmissible in a case involving alleged sexual misconduct. *See* Ind. Evid. Rule 412(a)(1); *see also* Ind. Code § 35-37-4-4. However, evidence of prior, false accusations of sexual misconduct made by the victim or witness does not run afoul of the Rape Shield Act. *See Blair v. State*, 877 N.E.2d 1225, 1233–34 (Ind. Ct. App. 2007), *trans. denied*. Rather than being an exception to the Rape Shield Act, such evidence is simply not subject to it, as it "is more properly understood as verbal conduct, not sexual conduct." *State v. Walton*, 715 N.E.2d 824, 826 (Ind. 1999).

[10] Contrary to the State's first argument, we conclude that Ludwig's offer of proof[2] is adequate to allow us to rule on the merits of his claim. That said, Ludwig's argument must fail, as he never advanced a valid basis for admissibility in his offer of proof. Ludwig did not inform the trial court that he planned to introduce evidence that *A.R.* made any prior, false accusation of sexual misconduct by her biological father, only that *someone* did. Because the basis for the admissibility for such evidence is "to prove for impeachment purposes that the complaining witness has previously made false accusations of [sexual misconduct,]" *id.*, any offer that does not indicate that the accusation was made by the complaining witness fails to state a valid basis for admissibility. The trial court did not abuse its discretion in refusing to allow Ludwig's proffered testimony.

## II. Appropriateness of Sentence

[11] This Court will revise a sentence authorized by statute only "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). The question is not whether another sentence is more appropriate, but whether Ludwig's sentence is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The "nature of the

---

[2] Evidence Rule 103(a) provides, in part, that "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and[, i]f the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."

offense" refers to a defendant's actions in comparison with the elements of the offense. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The "character of the offender" refers to "general sentencing considerations and the relevant aggravating and mitigating circumstances." *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007).

[12] Ludwig has the burden of proving that his sentence is inappropriate in light of the nature of his offenses and character. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[Deference to trial courts] should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[13] The nature of Ludwig's offenses is egregious in that he violated the trust of A.R. and his neighbors, a family that he had known for many years, by molesting A.R. multiple times over several years. Ludwig preyed on a victim he knew to be particularly vulnerable due to childhood issues, including her adoption, grooming her and taking advantage of her trust and innocence. Ludwig's offenses against A.R. have severely damaged her mentally and emotionally. Before divulging her molestation to her mother, A.R. could not focus at school and "her grades were failing[.]" Tr. Vol. II p. 45. As of sentencing, A.R still had failing grades, had transferred to another high school, and had endured three in-patient stays at a rehabilitation center. A.R. has become leery of all males—even her adoptive father—and has made several attempts at suicide.

[14] With respect to Ludwig's character, his history of employment and lack of any criminal history are somewhat commendable. That said, many persons are gainfully employed and, as such, this does not necessarily establish Ludwig's good character. *See Holmes v. State*, 86 N.E.3d 394, 399–00 (Ind. Ct. App. 2017) (recognizing that many are gainfully employed and that employment is not necessarily a mitigating circumstance), *trans. denied*. Likewise, persons are expected to be law-abiding. These circumstances do not establish anything particularly outstanding about Ludwig's character. Ludwig has some health issues, which is unfortunate, but we do not see how this bears on his character. In summary, the record contains no strong showing of any substantial virtuous traits or persistent examples of good character that would outweigh the trial court's sentencing discretion. *See Stephenson*, 29 N.E.3d at 122.

[15] The now eighty-one-year-old Ludwig also suggests that his twelve-year sentence should be reduced because if it is not, he will likely die in prison. While this is possible, Ludwig's age has no bearing on the nature of his offenses or his character. We will not accept an argument that old age, by itself, may render a sentence inappropriate pursuant to Appellate Rule 7(B). Ludwig has failed to establish that his twelve-year aggregate sentence is inappropriately harsh in light of the nature of his offenses and his character.

[16] We affirm the judgment of the trial court.

Baker, J., and Kirsch, J., concur.